

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-1-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OWEN COLE,

                    Plaintiff,

        v.

THE CITY OF NEW YORK, DETECTIVE
LUCIOUS JOHNSON and, POLICE OFFICER
JOHN DOE 1-10,

                    Defendants.

10 Civ. 5308 (LAP) (KNF)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Chief United States District Judge

 Plaintiff Owen Cole ("Plaintiff") brings this action under 42 U.S.C. §1983 against Defendants City of New York ("City") and Detective Lucious Johnson ("Johnson") (collectively "Defendants") asserting claims for false arrest, municipal liability for failure to train, screen, supervise, or discipline, and false arrest and discrimination under 42 U.S.C. §§ 1981 and 1983 based on "supervisory liability" arising from his arrest for drug possession on October 20, 2007.

 Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is GRANTED, and this action is hereby DISMISSED.

## BACKGROUND

**A. Factual History**

 Defendant Johnson, as of October 2007, was a Detective Third Grade in the New York City Police Department ("NYPD") and worked as part of the Brooklyn South Narcotics Unit to

1

investigate drug sales. (Def. R.56.1 Stmt. ¶ 6.)[1]  On October 17, 2007, Johnson obtained a

warrant to search the basement of 1668 Carroll Street in Brooklyn, New York. (*Id.* ¶ 11.)  At the

time, Edward Providence, with whom Plaintiff had been friends for nearly 20 years, lived in the

basement. (*Id.* ¶¶ 8-9.)  The search warrant was based on Johnson's affidavit that there was

reasonable cause to believe that crack cocaine, drug paraphernalia, and other evidence related to

the possession and distribution of crack cocaine would be found in the basement. (Publicker

Decl., Ex. E.)[2]  More specifically, several weeks prior on September 1, 2007, Detective Johnson

and other officers made multiple narcotics related arrests at the 1668 Carroll Street location,

including arresting Plaintiff for possession of a crack pipe. (Def.R.56.1 Stmt. ¶¶ 32-35).

Between that time and October 20, Defendants performed multiple "controlled buys" of crack

cocaine from the basement apartment. (*Id.* ¶ 12.)

      Shortly after midnight on October 20, 2007, Detective Johnson, along with other officers

including his supervisor NYPD Sergeant Robert Caban, executed the search warrant. (*Id.* ¶ 14.)

Plaintiff was in the basement at the time police entered the location. (*Id.* ¶ 18.)  There is some

dispute about what occurred after officers entered the basement.  As Plaintiff asserts in his

counterstatement of undisputed facts, Detective Johnson testified before the grand jury on

Plaintiff's underlying criminal charge and in a suppression hearing related to the search of the

basement that when he entered the room, he made eye contact with Plaintiff at which time

Plaintiff turned and ran away from him. (*See* Colihan Decl., Ex. 18 at 4:14-5:3, Ex. 20 at 14:1-

15:24.)[3]  Johnson further testified that while running away, Plaintiff threw a plastic bag into the

---

[1] "Defs. R.56.1 Stmt." refers to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, dated May 9, 2012.

[2] "Publicker Decl." refers to the May 9, 2012 Declaration of Suzanna H. Publicker in Support of Defendants' Motion for Summary Judgment. "Publicker Decl., Ex. E" refers to a copy of the search warrant obtained by Detective Johnson on October 17, 2007 to search the basement of 1668 Carroll Street.

[3] "Colihan Decl." refers to the May 29, 2012 Declaration of Michael Colihan in opposition to summary judgment. "Ex. 18" refers to portions of minutes of Detective Johnson's testimony before the grand jury related to Plaintiff's

tiles of the ceiling.  (Colihan Decl., Ex. 18 at 4:18-22, Ex. 20 at 15:8-12, 23:7-23:23.)  Johnson

testified that he continued to chase Plaintiff and eventually tackled him and put him in handcuffs.

(Colihan Decl., Ex. 18 at 5:1, Ex. 20 at 15:23-24; Publicker Decl. II, Ex. G at 237.)[4]  Defendants,

meanwhile, claim that Plaintiff testified that he did not see Detective Johnson until he was

already handcuffed and did not have any interaction with him until arriving at the police precinct

following the arrests.  (Def. R.56.1 Stmt. ¶¶ 21-22.)

Plaintiff was arrested and charged with Criminal Possession of a Controlled Substance.

(*Id.* ¶ 17.)  Johnson searched the basement, recovering 28 "twists" of crack cocaine from a hole

in the ceiling, two twists located on a bed and bedside table in the basement, and drug

paraphernalia including a digital scale.  (*Id.* ¶¶ 16, 26-29.)  Seven other individuals in addition to

Plaintiff were arrested in the basement at that time, including three individuals who had been

present at Plaintiff's September 1 arrest.  (*Id.* ¶ 24.)  Five of those individuals pled guilty to

Criminal Possession of a Controlled Substance in the Seventh Degree (*Id.* ¶ 30.)

Plaintiff was indicted by a grand jury on November 2, 2007 for Criminal Possession of a

Controlled Substance in the Third Degree and Fourth Degree and Criminally Using Drug

Paraphernalia in the Second Degree.  (*See* Publicker Decl., Ex. J.)[5]  Plaintiff was thereafter

incarcerated until February 2009.  At that time, the People recommended dismissal of criminal

proceedings against Plaintiff on the basis that he was out of the New York area pursuant to

deportation proceedings against him and that even if convicted, any sentence would likely be

---

underlying criminal charges.  "Ex. 20" refers to portions of the transcript from the December 1, 2008 *Mapp* hearing
in Plaintiff's underlying criminal case.  A *Mapp* hearing is held to determine whether evidence should be suppressed
on the basis that it was seized as a result of an unconstitutional search. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct.
1684 (1961).
[4] "Publicker Decl. II" refers to the June 11, 2012 Declaration of Suzanna H. Publicker.  "Ex. G" refers to excerpts
from the March 30, 2011 deposition of Defendant Johnson.
[5] "Publicker Decl., Ex. J" refers to the Grand Jury Indictment of Owen Cole, filed November 2, 2007.

limited to time already served. (Publicker Decl. II, Ex. F.)[6]  The court granted the People's

request and the case was dismissed on February 10, 2009.  (Colihan Decl., Ex. 23.)[7]

### B.  **Procedural History**

      Plaintiff filed the complaint in this action on July 13, 2010.  [dkt. no. 1.]  Defendants

answered on September 30, 2010.  [dkt. no. 7.]  Plaintiff thereafter filed subpoenas for deposition

testimony and document production on various non-parties to this action, specifically the

testimony of an Assistant District Attorney and two grand jury court reporters.  Specifically,

Plaintiff complained of the fact that Defendant Johnson had a portion of his grand jury testimony

re-transcribed because of an error allegedly made by the court reporter in initially transcribing

his testimony related to the October 20, 2007 arrests.  On April 8, 2011, Defendants moved to

quash Plaintiff's subpoenas under Federal Rules of Civil Procedure 26 and 45 on the basis that

the information sought was not relevant to the instant proceeding and that Plaintiff failed to

provide proper notice.  [dkt. nos. 24-26.]  Plaintiff opposed the motion, and Defendants replied.

[dkt. nos. 31-33, 35-37.]

      After initially denying Defendants' motion to quash on the basis that Defendants had no

standing to make such a motion on behalf of non-parties, to which Defendants objected,

Magistrate Judge Kevin Nathaniel Fox quashed Plaintiff's subpoenas by order on April 4, 2012,

finding that Plaintiff had not provided a reasonable time for the non-parties to comply with the

subpoenas in violation of Federal Rules of Civil Procedure 30 and 45. [dkt. nos. 42-44, 51.]

---

[6] "Publicker Decl. II, Ex. F" refers to the People's Recommendation for Dismissal of the Indictment against
Plaintiff, dated February 9, 2009.
[7] "Colihan Decl., Ex. 23" refers to the minutes from the February 10, 2009 proceeding dismissing the underlying
criminal action against Plaintiff.

Defendants thereafter moved for summary judgment on May 9, 2012.  [dkt. nos. 53-56.] Plaintiff opposed the motion on May 29, 2012, and Defendants filed a reply on June 11, 2012. [dkt. nos. 59, 63-65.]

## DISCUSSION

### A. <u>Legal Standard for Summary Judgment</u>

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York,* 366 F.3d 138, 148 (2d Cir. 2004).  The role of the court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986); *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Howley v. Town of Stratford,* 217 F.3d 141, 150–51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *see, e.g., Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir. 2002). In making this judgment, the court must view the record in the light most favorable to the non-moving party. *See, e.g., Hunter v. Bryant,* 502 U.S. 224, 233, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue,

the movant may satisfy his own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See, e.g., Celotex,* 477 U.S. at 322–23, 325, 106 S.Ct. 2548; *PepsiCo, Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Giannullo v. City of New York,* 322 F.3d 139, 140–41 (2d Cir. 2003).

If the moving party carries his initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact. *See, e.g., Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572 (2006); *Celotex,* 477 U.S. at 322; *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party cannot "rely merely on allegations or denials" of the factual assertions of the movant, Fed.R.Civ.P. 56(e)(2); *see, e.g., Amaker v. Foley,* 274 F.3d 677, 680–81 (2d Cir.2001), nor can he rely on his pleadings or on merely conclusory factual allegations. *See, e.g., Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348; *see also Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. *See, e.g., Celotex,* 477 U.S. at 324; *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

To demonstrate a "genuine dispute," the opposing party must come forward with sufficient evidence to permit a reasonable jury to return a verdict in his favor. *See, e.g.,*

*Anderson,* 477 U.S. at 242, 248, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348;

*Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir. 2001). Alternatively, if "the

party opposing summary judgment propounds a reasonable conflicting interpretation of a

material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.,*

712 F.2d 4, 9–10 (2d Cir. 1983); *see also Rogath v. Siebenmann,* 129 F.3d 261, 267 (2d Cir.1

997).

### B. 42 U.S.C. § 1983

Plaintiff brings claims against Defendant Johnson and City of New York under 42 U.S.C.

§ 1983. §1983 grants private citizens the right to sue the state or individuals acting under color

of law who violate the citizen's constitutional rights. *See* 42 U.S.C. § 1983.  To establish an

action under § 1983, a plaintiff must prove that (1) the defendant has deprived the plaintiff of a

right secured by the "Constitution and laws" of the United States, and (2) the deprivation

occurred "under color of any statute, ordinance, regulation, custom, or usage, of any State or

Territory." *See Adickes v. S.H. Kress,* 398 U.S. 144, 150 (1970).

### C. Claims Against Defendant Johnson

#### 1. False Arrest

Plaintiff claims he was falsely arrested by Defendants on October 20, 2007.  The

elements necessary to state a claim for false arrest under § 1983 are the same as those necessary

to state a claim for false arrest under New York law. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d

Cir. 1996). To state a claim for false arrest under New York law, a plaintiff must show that: (1)

the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the

confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was

not otherwise justified. *See Posr v. Doherty,* 944 F.2d 91, 97 (2d Cir.1991); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995).

Defendants move for summary judgment on Plaintiff's false arrest claim on the basis that Plaintiff has not demonstrated that Defendant Johnson was personally involved in arresting Plaintiff and that Defendants had probable cause to arrest Plaintiff. Defendant Johnson also claims he is entitled to qualified immunity for false arrest.

### a. Defendant Johnson's Personal Involvement in Arresting Plaintiff

Defendants argue that Plaintiff has not demonstrated that the officer who handcuffed and arrested Plaintiff was Defendant Johnson. Plaintiff asserts that Johnson was in fact the officer who arrested him but testified that the first time he remembers seeing Johnson was when he was already in handcuffs, that he was not aware of any interaction with Johnson until they arrived at the police precinct following the arrest, and that he in fact did not know who handcuffed and arrested him. (*See* Publicker Decl., Ex. D at 63-65.)[8]

The record contains evidence of Defendant Johnson's personal involvement in arresting Plaintiff. As stated above, Detective Johnson testified on multiple occasions – before the grand jury and in a suppression hearing on Plaintiff's underlying criminal case, and in deposition testimony in this civil action – that he physically handcuffed and arrested Plaintiff. Accordingly, viewing the evidence in the light most favorable to Plaintiff, this Court finds as a matter of law that Detective Johnson was the officer who arrested Plaintiff in the basement apartment on October 20, 2007.

---

[8] "Publicker Decl., Ex. D" refers to excerpts from the deposition transcript of Plaintiff Owen Cole, dated March 31, 2011.

8

### b. *Probable Cause*

Defendants claim that Detective Johnson had probable cause to arrest Plaintiff because of the presence of narcotics in the basement apartment and are therefore entitled to summary judgment on the false arrest claim. Probable cause to arrest is a complete defense to an action for false arrest, even where a person is ultimately acquitted, because it constitutes justification. *Torraco v. Port Auth. of. N.Y. & N.J.,* 615 F.3d 129, 139 (2d Cir. 2010); *see also Weyant,* 101 F.3d at 852 (citing *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991). The court must look at the "totality of the circumstances" and consider "the facts available to the officer at the time of arrest." *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002); *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997). The focus is on the information available at the time; the subjective intent of an officer is irrelevant. *Espada v. Schneider,* 522 F.Supp.2d 544, 552 (S.D.N.Y.2007). In addition, a probable cause showing requires only a "probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Valentine,* 539 F.3d 88, 94 (2d Cir. 2008) (citing *Illinois v. Gates,* 462 U.S. 213, 244 n. 13 (1983)).

A determination of whether probable cause to arrest existed may be made "as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant,* 101 F.3d at 852; *see Wu v. City of New York,* 934 F.Supp. 581, 588 (S.D.N.Y. 1996) (stating that "where the facts leading up to the arrest are undisputed, the existence of probable cause is for the court to determine as a matter of law.")

9

Defendants claim that Detective Johnson, after entering the apartment, saw Plaintiff attempt to secrete a plastic bag in the ceiling as he ran away before being chased down and tackled by Johnson. Defendants thereafter found 28 twists of crack cocaine in the basement hidden in the ceiling and two twists on a bed and bedside table in the basement, along with drug paraphernalia. Plaintiff denies any knowledge about the presence of narcotics in the basement and claims that he did not learn that drugs had been recovered until he arrived at the police precinct on the night he was arrested. (Colihan Decl., Ex. 19 ("Pl. Dep.") at 66-67.)[9]

Plaintiff's asserted lack of awareness of drugs in the basement does not preclude a finding that Defendants had probable cause to arrest him. Under the doctrine of constructive possession, officers have probable cause "to arrest anyone in a dwelling when contraband is discovered in plain view and it reasonably appears that all members of the dwelling exercised dominion and control over other the area in which the contraband is found." *Takacs v. City of New York*, 2011 WL 8771384, at *3 (S.D.N.Y. Jan. 24, 2011); *see United States v. Heath*, 455 F.3d 52, 58 n.4 (2d Cir. 2006) (evidence of Plaintiff's "actual observation of the contraband was not necessary to create probable cause for the arrest . . . [because] [w]hat mattered was that contraband was left openly, in a public space, so that a reasonably cautious person could easily conclude that guests and residents of the home were highly likely to see the contraband in the ordinary course.") Where, as in this case, "there is no evidence that precautions were taken to prevent people in the house from coming across the putatively visible contraband, and from doing so in their ordinary course of their expected behavior . . . reasonably cautious police

---

[9] "Colihan Decl., Ex. 19" refers to excerpts from a deposition transcript of Plaintiff Owen Cole.

officers could have concluded that the home's adult occupants were complicit in the illegal activities involving the contraband." *Heath*, 455 F.3d at 57.

Under the totality of the circumstances in light of "the facts available to the officer at the time of the arrest," Defendants had probable cause to arrest Plaintiff. *See Ricciuti,* 124 F.3d at 128 (stating that the probable cause inquiry is based on the officer's knowledge at the time rather than on the complainant's subjective intentions); *see Walcyzk v. Rio*, 496 F.3d 139, 156-157 (2d Cir. 2007) (stating generally that probable cause is a somewhat fluid concept that does not require a *prima facie* showing of criminality). Defendants acted reasonably in believing that illegal narcotics activity was being conducted on the premises. Plaintiff's October 20 arrest followed other drug-related activity at 1668 Carroll Street. Defendant Johnson was present when Plaintiff was arrested for possession of a crack pipe at the location just weeks earlier. (Def. R.56.1 Stmt. ¶¶ 32-33.) Three of the individuals present on October 20 were also present during the September 1 arrests, and one of them was arrested at that time for a drug related offense along with Plaintiff. (*Id.* ¶ 34.) In the meantime, Defendants engaged in multiple "controlled buys" of crack cocaine from the basement apartment and on this basis, obtained a search warrant swearing under oath that reasonable cause existed to believe that drugs, drug paraphernalia, and other associated property would be found in the basement. (Publicker Decl., Ex. B at 60-61.)[10]

Under these circumstances, Defendant Johnson was reasonable in believing that Plaintiff was engaged in criminal behavior and therefore had probable cause to arrest him.

Plaintiff also appears to claim that narcotics were never actually found in the apartment, which is entirely contradicted by admissible evidence in the record. Defendant Johnson's testimony about finding over two dozen twists of crack cocaine along with drug paraphernalia

---

[10] "Publicker Decl., Ex. B" refers to excerpts from the deposition transcript of Defendant Johnson, dated March 30, 2011.

during the execution of the search warrant is supported by his sworn deposition testimony, his "memo book" from the night of the arrest, Arrest Reports for Plaintiff and the other individuals arrested, Field Test reports indicating that the substance found in the basement was crack cocaine, and Certificates of Disposition reflecting that five of the individuals arrested pled guilty to Criminal Possession of a Controlled Substance in the Seventh Degree. (Publicker Decl., Exs. F, I, K, L, M, N.)[11]  Nonetheless, Plaintiff repeatedly argues that there is "no evidence as to the facts alleged other than the statements of and documents prepared by defendants Johnson, which a reasonable fact finder could easily find incredible." (*See, e.g.*, Pl. R.56.1 Stmt. ¶¶ 16, 26-29.) In support, Plaintiff claims that Detective Johnson has been a defendant in seven other federal civil rights actions. (*See* Colihan Decl. ¶¶ 1, 3, 7, 9, 11, 13.)  In short, Plaintiff argues that Defendant Johnson is an untrustworthy individual and on that basis this Court should discredit his sworn testimony.

Defendants have set forth admissible evidence showing that narcotics were discovered in the basement and that they had probable cause to arrest Plaintiff.  Plaintiff's conclusory assertions to the contrary are insufficient to raise a genuine dispute.  Once the party moving for summary judgment claims the absence of a genuine dispute of material fact, the opposing party cannot "rely merely on allegations or denials" but instead must present specific evidence showing that there is in fact a genuine dispute. *See, e.g.*, *Amaker v. Foley,* 274 F.3d at 680-81; *see Celotex*, 477 U.S. at 324.  Plaintiff has not done so.

---

[11] "Publicker Decl., Exs. F, I, K, L, M, N" refers to the following, respectively: A copy of the memo book of Defendant Detective Johnson from October 20, 2007; the Arrest Report for Plaintiff's October 20, 2007 arrest; the Arrest Reports for the October 20, 2007 arrests of Joanne Adams, Jeffrey Belton, Darryl Bostic, Patrick Brown, and Wildine Hyppolite; the Field Test Report from the October 20, 2007 arrest of Jeffrey Belton; the Field Test Report from the October 20, 2007 arrest of Joanna Adams; and Certificates of Disposition dated April 24, 2012 reflecting the guilty pleas of Joanne Adams, Jeffrey Belton, Darryl Bostic, Patrick Brown, and Wildine Hyppolite.

For the reasons above, this Court finds that Defendants' arrest of Plaintiff was supported by probable cause. Defendants are therefore entitled to summary judgment on Plaintiff's §1983 false arrest claim.

### c.  *Qualified Immunity*

Defendant Johnson asserts that even if this Court finds that he did not have probable cause to arrest Plaintiff, he is entitled to qualified immunity on Plaintiff's false arrest claim. Police officers are immune from liability for money damages in suits brought against them in their individual capacities if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Even when a plaintiff's rights and the permissible scope of the official's conduct are clearly established, qualified immunity protects a government actor if it was objectively reasonable to believe the conduct was lawful at the time. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007); *see also Weyant v. Okst,* 101 F.3d 845, 857 (2d Cir. 1996).

In the context of a false arrest claim, an officer who has "arguable probable cause" is entitled to qualified immunity. *Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir. 2001); *Goldberg v. Town of Glastonbury,* 453 F. App'x 40, 42 (2d Cir. 2011). Even in the absence of probable cause, an officer acts with "arguable probable cause" if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed. *Cerrone*, 246 F.3d at 202; *see Ricciuti*, 124 F.3d at 128 (an officer is protected by qualified immunity if it was "objectively reasonable for the officer to believe that there was probable cause to make the arrest, or [] if reasonably competent police officers could disagree as to whether there was probable cause" to do so.) This relaxed standard reflects the reality that

officers may reasonably but mistakenly conclude that probable cause exists. As such, the focus is not on whether or not the officer's conduct was correct, but whether it was objectively reasonable under the circumstances. *See Lennon*, 66 F.3d at 421. Only when "'no officer of reasonable competence could have made the same choice in similar circumstances'" is an officer's conduct unreasonable and undeserving of qualified immunity. *Anthony v. City of New York,* 339 F.3d 129, 138 (2d Cir. 2003) (quoting *Lennon,* 66 F.3d at 420-21). As such, "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Lennon*, 66 F.3d at 421.

Plaintiff argues that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" and that a reasonable juror "could find that Johnson fits in either or both categories." (Pl. Mem. at 21-22; *See Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986)).[12] In the words of Plaintiff, Johnson "has no regard for an oath." (Pl. Mem. at 22.)

Defendant Johnson is entitled to qualified immunity on Plaintiff's false arrest claim. Under the totality of the circumstances, Defendant Johnson had arguable probable cause to arrest Plaintiff. Defendant Johnson was present when Plaintiff was arrested at the same location just weeks prior, conducted controlled buys in the meantime, and obtained a search warrant for the location. Multiple individuals present at the September 1 arrests were also present on October 20. Johnson was reasonable in believing that there was probable cause to arrest Plaintiff, and other officers of reasonable competence in the same circumstances and with the same knowledge could, at the very most, disagree whether probable cause existed.

---

[12] "Pl. Mem." refers to Plaintiff's Memorandum of Law in Opposition to Summary Judgment, dated May 29, 2012.

Because this Court cannot say that "no officer of reasonable competence could have made the same choice in similar circumstances," Defendant is entitled to qualified immunity on Plaintiff's false arrest claim. *See Anthony*, 339 F.3d at 138.

### 2. **Supervisory Liability**

Plaintiff's complaint includes a claim against Defendant Johnson for "failing to properly train, supervise, or discipline individual defendants" resulting in violations of Plaintiff's rights. (Complaint ¶ 22.)  Plaintiff has abandoned this claim, stating "[t]he Court need not consider the question of supervisory liability since the Plaintiff has established that Defendant Johnson was directly responsible" for the events of which Plaintiff complains.  (Pl. Mem. at 12.)  Accordingly, the Court has not considered Plaintiff's claim against Defendant Johnson for "supervisory liability" and grants Defendants' motion for summary judgment on this claim.

### 3. **42 U.S.C. § 1981**

Plaintiff asserts a claim against Defendant Johnson under 42 U.S.C. §1981.  To establish such a claim, a plaintiff must allege facts supporting that the plaintiff is a member of a racial or ethnic minority, that the conduct of which plaintiff complains was purposefully discriminatory and racially motivated, and that the discrimination was prohibited by the statute. *Brown v. City of Oneonta, N.Y.* 221 F.3d 329, 339 (2d Cir. 2000); *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988).   A plaintiff also must demonstrate that the prohibited acts were committed pursuant to a municipal policy or custom. *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d. Cir. 2004).

Defendants argue that Plaintiff's §1981 claim must fail because Plaintiff has not provided evidence of any policy under which Defendants violated his rights and, in the alternative, that

15

Plaintiff has abandoned his §1981 claim.  Plaintiff has not alleged any facts that could support his §1981 claim, and the record is devoid of any such facts.  This claim is therefore dismissed.

## D.  Claims Against Defendant City

### *1.  Monell*

Plaintiff alleges that Defendant City of New York "had de facto policies, practices, customs and usage" and "failed to properly train, screen, supervise, or discipline employees and police officers, and failed to inform the individual defendants' supervisors of their need to train, screen and supervise or discipline individual defendants." (Complaint ¶¶ 18-19.)  Plaintiff's Third Claim also appears to assert a similar claim under "supervisory liability." (*See id.* ¶ 22.) Defendants argue that Plaintiff fails to demonstrate any municipal policy or custom of Defendant City and that, alternatively, Plaintiff has abandoned this claim by not addressing it in opposition to summary judgment.

A "local government may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To sustain a §1983 claim against a local government, a plaintiff must demonstrate that a policy, ordinance, regulation, or decision adopted by the municipality and implemented by its employee. *Monell,* 436 U.S. at 691-92.  The plaintiff must also demonstrate a sufficient causal relationship between the violation and the municipal policy or practice. *Id.*  The government as an entity can only be held liable if the plaintiff demonstrates a sufficient causal relationship by showing that "execution of [the] government's policy or custom" inflicts the injury. *Id.*

In addition, a policy may be established by showing that the acts of the municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which the supervising policy-maker must have been aware. *See, e.g., Connick v.*

*Thompson*, 131 S.Ct. 1350 (2011).  A plaintiff asserting municipal liability for failure to train or supervise its employees must demonstrate that the municipality failed to do so at a level rising to deliberate indifference and that any constitutional violation resulted from that deliberate indifference. *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 128-31 (2d Cir. 2004); *City of Canton v. Harris,* 489 U.S. 378, 388 (1989); *see Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (stating that a policy may be inferred where the municipality "so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.")

The record contains no evidence that Defendant City had a municipal policy or custom under which Defendants may have violated Plaintiff's rights.  Similarly, there is no evidence in the record related to how Defendant City inadequately trained or supervised its police officers.  Accordingly, there is no triable issue on this claim and Defendants' motion for summary judgment is granted.

### 2.  42 U.S.C. § 1981

Plaintiff asserts a claim against Defendant City under 42 U.S.C. §1981.  A claim against a municipality for discrimination must be brought under 42 U.S.C. §1983 rather than §1981. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).  As such, a plaintiff must show that the challenged discriminatory acts were done pursuant to a municipal policy or custom. *See id.* at 733-36; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978).

As explained above, Plaintiff's *Monell* claim against Defendant City must be dismissed because the record contains no evidence that Defendant City had a municipal policy, custom, or practice under which Plaintiff's rights may have been violated.  Accordingly, summary judgment is granted in favor of Defendant City on Plaintiff's §1981 claim.

17

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [dkt. nos. 53-56] is GRANTED and this action is hereby DISMISSED.

SO ORDERED.

Dated:      New York, New York
            February _28_, 2013

LORETTA A. PRESKA, Chief U.S.D.J.

18